UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| AMY EDMONDSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 1:13cv313 |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 405(g). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g). The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since February 27, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: obesity, bi-polar disorder, post traumatic stress disorder post childhood abuse, schizoaffective disorder, left knee issue, and degenerative disc disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),04.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could only occasionally climb ladders, ropes, scaffolds, ramps or stairs, and could only occasionally balance, stoop, kneel, crouch and crawl. Additionally, the claimant must avoid concentrated exposure to moving machinery and exposure to unprotected heights. Moreover, the claimant is limited to simple, routine and repetitive work performed in a work environment free of fast-paced production requirements and only occasional interactions with coworkers, but could work around coworkers throughout the day without any tandem tasks. Additionally, work would need to be isolated from the general public with only occasional interactions with supervisors. Finally, the claimant would need to sit or stand alternatively, but would not be off task more than 10% of the work period.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 2, 1983, and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).[1]

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled." whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

---

[1] This is incorrect. A person "closely approaching advanced age" is a person aged 50-54. As Plaintiff was born in 1983, she is currently only 31 years old, which puts her in the "younger person" age category. 20 C.F.R. Section 404.1563.

economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a). (Tr. 20-34).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on June 9, 2014. On August 20, 2014, the defendant filed a memorandum in support of the Commissioner's decision, and on August 30, 2014, Plaintiff filed her reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff protectively filed an application for Disability Insurance Benefits on November

4

29, 2010, alleging disability beginning on October 15, 2008. Plaintiff and a vocational expert testified at an administrative hearing before ALJ Robert Butler. On July 20, 2012, the ALJ determined that Plaintiff was not disabled because she retained the residual functional capacity (RFC) to perform a significant number of light level jobs in the national economy. On August 30, 2013, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 28 years old on the date of the ALJ's decision (Tr. 35, 189). She had a high school education (Tr. 233), and past relevant work experience as a health aide (semi-skilled, medium as generally performed, but light as performed by Plaintiff) (Tr. 103-04). After her alleged disability onset date, from 2008 through 2010, Plaintiff worked as a cashier at a grocery store (light level, semi skilled), albeit not at the substantial gainful activity level (Tr. 20, 104).

Plaintiff's medical history is as follows. On April 15, 2011, her primary care physician, Lisa N. Booth, M.D., documented left knee pain and noted that Plaintiff was ambulating with a cane. On April 18, 2011, x-rays revealed minimal patellofemoral degenerative change. On May 12, 2011, an MRI revealed a small Baker's cyst and joint effusion. On May 18, 2011, Dr. Booth referred her to an orthopaedic physician, Karl T. Wagner, M.D., for further evaluation. Dr. Wagner reviewed the MRI, found peripatellar tenderness, and diagnosed patellar chondromalacia. In response, Dr. Wagner prescribed pain medication (Ultram), an anti-inflammatory (Mobic), and physical therapy. Plaintiff pursued physical therapy for her left knee issues from May 25, 2011 to June 22, 2011. On September 12, 2011, Dr. Booth revised the medication regimen to Flexeril, Vicodin, and Mobic. On November 8, 2011, Dr. Booth renewed the diagnosis of left knee pain and noted that some days Plaintiff continued to have trouble ambulating. As a result, Dr. Booth

5

maintained the Mobic prescription and referred her back to Dr. Wagner.

On May 22, 2009, Dr. Booth identified a keloid scar on Plaintiff's neck. On July 20, 2009, Dr. Booth noted that Plaintiff experienced neck pain and could not move her right arm. Dr. Booth then diagnosed cervicalgia, took her off work, and prescribed Naprosyn, Flexeril, and Darvocet. On August 21, 2009, an MRI of the cervical spine showed mild posterior ligamentous hypertrophy at C5-C6 and C6-C7. On August 21, 2009, an MRI of the thoracic spine showed atypical hemangioma at T-1 or T-4, and mild right posterior vertebral spurring at T-1 and T-2.

On August 21, 2009, an MRI of the lumbar spine showed a broad-based central L4-L5 disk protrusion with mild bilateral facet arthropathy, and an L5-S1 bulge with mild left-sided foraminal stenosis and mild to moderate bilateral facet arthropathy. On August 28, 2009, Dr. Booth again diagnosed cervicalgia and back pain.

On January 13, 2011, the consultative examiner identified lumbar range of motion deficits in forward flexion and extension.

On April 15, 2011, Dr. Booth renewed the diagnosis of cervicalgia and back pain, and prescribed Naprosyn and Flexeril. On August 22, 2011, Dr. Booth documented that Plaintiff's low back pain radiated into both thighs. Dr. Booth also elicited a positive straight leg raising test bilaterally and noted that pain limited Plaintiff's range of motion. Consequently, Dr. Booth ordered another lumbar MRI. On August 25, 2011, Plaintiff underwent a lumbar MRI that revealed L4-L5 broad-based central disk protrusion with mild disk space narrowing, a posterior tear of the annulus fibrosis, mild ventral impression of the thecal sac, and mild bilateral degenerative facet arthropathy; L5-S1 broad-based disk bulge with mild left foraminal stenosis, mild bilateral recess stenosis, and degenerative facet arthropathy.

After evaluating the MRI, Dr. Booth referred Plaintiff to Robert M. Shugart, M.D., an orthopaedic surgeon. On September 9, 2011, Dr. Shugart examined Plaintiff, recommended conservative care, and set up an L4-L5 epidural injection. On September 12, 2011, Dr. Booth renewed the Flexeril, Vicodin, and Mobic prescriptions. On October 5, 2011, David S. Stensland, M.D., an orthopaedic surgeon, diagnosed a lumbar herniated nucleus pulpolsus and administered an L4-L5 interlaminar epidural injection. On November 30, 2011, Dr. Stensland again diagnosed a lumbar herniated nucleus pulpolsus and administered another L4-L5 interlaminar epidural injection. Plaintiff then pursued physical therapy for her back issues from December 28, 2011 to March 5, 2012.

On March 10, 2005, a mental health therapist advised Plaintiff that Seroquel could cause weight gain. On June 29, 2011, her weight was 280 pounds and her BMI was 41. On July 7, 2011, her weight was 281 pounds. On August 22, 2011, Dr. Booth communicated to Plaintiff that weight loss would help with back and pain. On September 9, 2011, her height was 5'7" and her weight was 265 pounds.

On June 2, 2004, Northeastern Center staff recorded bipolar disorder and acute stress disorder and assigned Plaintiff a Global Assessment of Functioning (GAF) score of 50. From March 10, 2005 to April 27, 2006, Plaintiff received mental health services from Saint Joseph County (Michigan) Community Mental Health Services. During this treatment period, Plaintiff's GAF scores ranged from 40 to 45. Her psychiatrist variously diagnosed her with post traumatic stress disorder (PTSD), binge eating disorder, major depressive disorder, and noted a history of alcohol abuse, history of sexual abuse, and history of attention deficit hyperactivity disorder (ADHD). The treatment regimen included medication management and outpatient

7

therapy. Her psychiatrist variously prescribed Zonegram, Abilify, Seroquel, Paxil, and Lexapro.

On December 23, 2008, consultative examiner, Vijay G. Kamineni, M.D., diagnosed generalized anxiety disorder and major depressive disorder.

From December 29, 2010 to April 5, 2012, Plaintiff received mental health services from Northeastern Center. During this treatment period, Plaintiff's GAF scores ranged from 38 to 52. Her psychiatrist, Sylvia Rutten, M.D., variously diagnosed her with PTSD, schizoaffective disorder, and avoidant personality disorder. The treatment regimen included medication management, individual therapy, dialectical behavior therapy, group therapy, and individual ADL training in the home. Her psychiatrist prescribed Prazosin and Saphris.

On January 19, 2011, a consultative psychologist, Dan L. Boen, Ph.D., conducted a Mental Status Examination. His diagnostic impressions encompassed major depressive disorder and social phobia and a GAF score of 55.

On January 31, 2011, as a part of the "Psychiatric Review Technique", a DDB non-examining consultative psychologist, F. Kladder, Ph. D., diagnosed Plaintiff with major depressive disorder and social phobia and identified moderate limitations in activities of daily living, moderate limitations in maintaining social functioning, mild limitations in maintaining concentration, persistence and pace, and no episodes of decompensation. This same consultative psychologist also completed the Mental Residual Functional Capacity Assessment (MRFCA), which noted the following mental health functional deficits: (1) moderate limitation in the ability to understand and remember detailed instructions; (2) moderate limitation in the ability to carry out detailed instructions; (3) moderate limitation in the ability to maintain attention and concentration for extended periods; (4) moderate limitation in the ability to complete a normal

8

workday and workweek without interruptions from psychologically based symptoms; (5) moderate limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods; and (6) moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors.

On April 5, 2012, the treating psychiatrist, Dr. Rutten, completed a mental residual functional capacity assessment and arrived at the following limitations: (1) moderate limitation in the ability to remember locations and work-like procedures; (2) moderate limitation in the ability to understand and remember detailed instructions; (3) moderate limitation in the ability to carry out detailed instructions; (4) moderate limitation in the ability to sustain an ordinary routine without special supervision; (5) moderate limitation in the ability to work in coordination with or proximity to others without being distracted by them; (6) moderate limitation in the ability to make simple work related decisions; (7) moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; (8) moderate limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods; (9) moderate limitation in the ability to interact appropriately with the general public; (10) moderate limitation in the ability to ask simple questions or request assistance; (11) moderate limitation in the ability to accept instruction and to respond appropriately to criticism from supervisors; (12) moderate limitation in the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (14) moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (15) moderate limitation in the ability to respond to changes in work setting; (16) moderate limitation in the ability to be aware of normal hazards

9

and take appropriate precautions; (17) marked limitation in the ability to travel in unfamiliar places or use public transportation; and (18) moderate limitation in the ability to set realistic goals or make plans independent of others.

In support of remand, Plaintiff first argues that the ALJ's sit/stand limitation is defective because the frequency of position changes is not enumerated as required by relevant case law. The ALJ's RFC contains the following limitation: "[T]he claimant would need to sit or stand alternatively..." Plaintiff contends that this sit/stand limitation does not possess the required specificity. It must either enumerate the frequency of position changes or it must specify that the claimant is able to choose to sit or stand when the claimant feels it necessary. In this regard, the limitation must clearly indicate that the worker has control over when to initiate a position change. As the Seventh Circuit stated in *Arnett v. Astrue*, 676 F.3d 586 (7th Cir 2012):

> An RFC must be specific about the required frequency of standing and sitting. SSR 96–9p, 1996 SSR LEXIS 6, at *18–19 (July 2, 1996). Arnett's RFC provides that she must be able to alternate between sitting and standing "throughout the workday." This does not specify a particular frequency, and does not require that Arnett be able to choose to sit or stand when she feels it is necessary. *See Ketelboeter v. Astrue*, 550 F.3d 620, 626 (7th Cir.2008) (concluding that RFC specifying applicant be able to alternate between sitting and standing at applicant's option was adequate); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir.2007).

In the present case, the ALJ did not clearly indicate that it is the Plaintiff who has control over when to initiate a position change. The ALJ's use of the term "alternatively" provides no clarification because sit/stand inherently involves alternating. Thus Plaintiff concludes that the RFC does not satisfy the requirements of *Ketelboeter* and *Arnett*, *supra*.

The Commissioner, however, asserts that the ALJ explicitly quantified the sit/stand option in his RFC finding wherein the ALJ found that Plaintiff "would need to sit or stand

alternatively, but would not be off task for more than 10% of the work period." The Commissioner argues that the ALJ specifically quantified that Plaintiff could alternate her need to sit or stand within the parameters of not being off task for more than 10% of the eight hour work period. The Commissioner explains that allowing up to 10% of the workday for alternating Plaintiff's position translates to six minutes per hour during which time she could alternate her position, which would be in addition to her normal work breaks and lunch time.

The Commissioner argues that, additionally, the vocational expert fully understood the parameters of the sit/stand option the ALJ contemplated. The Commissioner points out that in response to a hypothetical question posed by the ALJ, the vocational expert testified that there would still be thousands of light unskilled jobs available that a person could perform if that person could sit or stand alternatively given the person was not off task more than 10% of the work period (Tr. 108-09). *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (the hypothetical question need only contain a description of limitations supported by the medical record); *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992) (vocational expert testimony constitutes substantial evidence for finding as to what jobs a claimant can perform with her particular limitations).

However, in reply, the Plaintiff still contends that the sit/stand frequency requirement is absent from the ALJ's RFC. Plaintiff explains that the Commissioner essentially maintains that an "on or off" task percentage goal is the same as a frequency requirement. Plaintiff argues that the Commissioner is incorrect. Plaintiff notes that, conceivably, a worker could meet a designated task percentage goal with a near infinite variety of sit/stand frequencies. However, whether a worker could meet a particular task percentage goal with a particular sit/stand

11

frequency requires the opinion of a vocational expert. In order to obtain that expert opinion, the RFC in a hypothetical must contain both the particular sit/stand frequency and the particular task percentage goal. As the ALJ omitted the sit/stand frequency, Plaintiff requests a remand.

This Court agrees with Plaintiff that the ALJ's RFC analysis and hypothetical fail to meet the requirements set forth in *Arnett* and *Ketelboeter*. Accordingly, this case will be remanded on that basis.

Next, the Plaintiff argues that the ALJ failed to incorporate into the RFC all the limiting effects related to her mental health impairments and failed to consider the combined impact of all the impairments. An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe. 20 C.F.R. § 404.1545(a). Moreover, an ALJ may not ignore entire lines of evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir.2008). When explaining why, in assessing the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" SSR 96-8p explains:

> While a "not severe" impairment(s) standing alone may not significantly
> limit an individual's ability to do basic work activities, it may--
> when considered with limitations or restrictions due to other
> impairments--be critical to the outcome of a claim.
> SSR 96-8p, 1996 WL 374184 at *5.

In the present case, Dr. Rutten opined that Plaintiff would be limited in the following ways not included in the ALJ's RFC: (1) marked limitation in the ability to travel in unfamiliar places or use public transportation; (2) moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (3) moderate limitation in the ability to accept instruction and to respond appropriately to criticism from

12

supervisors; (4) moderate limitation in the ability to sustain an ordinary routine without special supervision; (5) moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and (6) moderate limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods.

The ALJ did not explain in his decision why he rejected these limitations, while including the vast majority of Dr. Rutten's other limitations. Plaintiff argues that the ALJ violated the prohibition against "picking and choosing" only the evidence that supports an ALJ's position. *See Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir.1984); *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir.1984); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir.2000). The ALJ analyzed Dr. Rutten's opinion as follows:

> I find Dr. Rutten's opinion very credible and give it significant weight. Dr. Rutten had been treating the claimant for a while and was familiar with the claimant's symptoms, treatment, and limitations. Dr. Rutten's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and was consistent with other evidence in the claimant's case record.

Plaintiff argues that it makes no sense that the ALJ excluded any part of Dr. Rutten's opinion. Plaintiff claims that this lapse in logic also suggests that the ALJ failed to build an accurate and logical bridge between the evidence and the result. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996).

Plaintiff's mental health limitations as set forth by Dr. Rutten contain a supervision paradox. Plaintiff requires special supervision to sustain an ordinary routine, but—at the same time---Plaintiff possesses reduced ability to accept instruction from supervisors and to respond appropriately to criticism from supervisors. An employee cannot both be left alone and specially

13

supervised, but that is what Plaintiff requires. Plaintiff argues that the excluded limitations set forth above also indicate that Plaintiff is much more limited than the ALJ's RFC indicates.

Plaintiff also contends that the ALJ erred in not according controlling weight to Dr. Rutten's opinion, as he was the treating psychiatrist. A treating doctor's opinion receives controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir.2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir.2010). An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir.2011); *Campbell*, 627 F.3d at 306. In the present case, the ALJ's endorsement of Dr. Rutten's opinion, referred to above, explicitly acknowledges that Dr. Rutten's opinion is consistent with the other evidence of record. Plaintiff argues that under these circumstances, case law and Social Security Regulations required the ALJ to give Dr. Rutten's opinion controlling weight and to include all its limitations in a hypothetical at the hearing and in the RFC contained in the decision.

In response, the Commissioner states that the ALJ was not required to incorporate Dr. Rutten's limitations verbatim into his RFC finding. The Commissioner asserts that the ALJ formulated his mental RFC finding based upon the opinion of Dr. Rutten and of the other medical sources of record, in addition to other evidence of Plaintiff's mental functioning ability. The Commissioner argues that a commonsense reading of the ALJ's RFC finding shows that the RFC finding is consistent with and accounted for Dr. Rutten's limitations. The ALJ notes that the ALJ found Plaintiff could perform simple, routine and repetitive work performed in an environment free of fast-paced production requirements and involving only simple work related

decisions and routine work place changes (Tr. 25). Plaintiff could have only occasional interaction with co-workers, but could work around co-workers throughout the day without any tandem tasks (Tr. 25). Additionally, work would need to be isolated from the general public with only occasional interactions with supervisors (Tr. 25). The Commissioner argues that the moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms was accommodated by restricting Plaintiff to only simple, routine and repetitive work performed in an environment free of fast-paced production requirements and involving only simple work related decisions and routine work place changes (Tr. 25). The social limitations of no contact with the public and only occasional contact with others accounted for the moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness (Tr. 25). Plaintiff's moderate limitation in the ability to accept instruction and to respond appropriately to criticism from supervisors was accommodated by limiting Plaintiff to only occasional interactions with supervisors (Tr. 25). Plaintiff's moderate limitation in the ability to sustain an ordinary routine without special supervision was accommodated by work involving only simple work-related decisions and routine work place changes (Tr. 25). The Commissioner argues that, contrary to Plaintiff's assertions, Dr. Rutten's opinion did not suggest Plaintiff "requires special supervision." Rather, Dr. Rutten opined Plaintiff would have a moderate limitation in the ability to sustain an ordinary routine without special supervision, but did not opine that she required special supervision (Tr. 608). In addition, Plaintiff's moderate limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods was accommodated by the ALJ's restriction to an environment free of fast-paced production

15

requirements (Tr. 25). As for the assessed marked limitation in the ability to travel in unfamiliar places or use public transportation, none of the jobs the vocational expert identified as consistent with the ALJ's RFC finding required travel in unfamiliar places or using public transportation (Tr. 108-09). *See* U.S. Department of Occupational Titles (DOT), mail sorter # 209.687-026; photo copy machine operator # 207.685-014; cleaner # 323.687-014, vol. 1 (4th Ed. 1991). The Commissioner concludes that a logical reading of the ALJ's mental RFC findings shows that Dr. Rutten's assessed limitations were accounted for in the ALJ's mental RFC finding.

While the Commissioner may be correct that perhaps the majority of Plaintiff's mental limitations were accounted for in the ALJ's RFC finding, the court finds that the RFC finding is, at best, somewhat ambiguous. This Court cannot be certain that the ALJ or the vocational expert properly considered all of Plaintiff's limitations. And, in fact, it is confusing to the Court that the ALJ would expect anyone with Plaintiff's myriad physical and mental health problems and limitations to be able to perform substantial gainful activity on a regular basis. Therefore, as the case is being remanded for a further look at the sit/stand frequency issue, the Court will also remand for further proceedings with respect to the mental health component of the RFC finding.

<u>Conclusion</u>

On the basis of the foregoing, this case is hereby REMANDED to the Commissioner for proceedings consistent with this opinion.

Entered: October 28, 2014.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court